UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

GLORIA D. RODRIGUEZ,

     Plaintiff,

v.                            Case No.:  6:20-cv-1674-MRM

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____/

**OPINION AND ORDER**

     Plaintiff Gloria D. Rodriguez filed a Complaint on September 11, 2020.  (Doc. 1).  Plaintiff seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability and disability insurance benefits.  The Commissioner filed the transcript of the administrative proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed a joint memorandum detailing their respective positions.  (Doc. 35).  For the reasons set forth herein, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I.    Social Security Act Eligibility

     The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a

continuous period of not less than twelve months.  42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 404.1505.  The impairment must be severe, making the claimant unable to do her previous work or any other substantial gainful activity that exists in the national economy.  42 U.S.C. §§ 423(d)(2), 1382c(a)(3); 20 C.F.R. §§ 404.1505 - 404.1511.  Plaintiff bears the burden of persuasion through step four, while the burden shifts to the Commissioner at step five.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

## II.     Procedural History

Plaintiff filed an application for a period of disability and disability insurance benefits on December 22, 2017, alleging a disability onset date of December 14, 2015.  (Tr. at 21).[1]  Plaintiff's claim was denied initially on April 13, 2018, and upon reconsideration on May 22, 2018.  (*Id.*).  Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), and ALJ Juliana P. Heaton held a hearing on October 22, 2019.  (*Id.* at 67-87).  The ALJ issued an unfavorable decision on December 16, 2019.  (*Id.* at 21-30).  The Appeals Council subsequently denied Plaintiff's request for review on July 8, 2020.  (*Id.* at 1-5).  Plaintiff then filed her Complaint with this Court on September 11, 2020, (Doc. 1), and the parties

---

[1]  The SSA revised the rules regarding the evaluation of medical evidence and symptoms for claims filed on or after March 27, 2017.  *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5844 (Jan. 18, 2017).  The new regulations apply in Plaintiff's case because Plaintiff filed her claim after March 27, 2017.  (*See* Tr. at 21; Doc. 35 at 17).

consented to proceed before a United States Magistrate Judge for all purposes. (Docs. 32, 33).  The matter is, therefore, ripe for the Court's review.

III.    **Summary of the Administrative Law Judge's Decision**

An ALJ must follow a five-step sequential evaluation process to determine if a claimant has proven that she is disabled.  *Packer v. Comm'r of Soc. Sec.*, 542 F. App'x 890, 891 (11th Cir. 2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). An ALJ must determine whether the claimant:  (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform her past relevant work ("PRW"); and (5) can perform other work of the sort found in the national economy.  *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004).  The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five.  *Hines-Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

The ALJ determined that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2016.  (Tr. at 23).  At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity from December 14, 2015, the alleged onset date, through December 31, 2016, the date last insured.  (*Id.* at 24).  At step two, the ALJ determined that Plaintiff had the following severe impairments:  "untraceable hepatitis B, fibromyalgia, and mild lumbar degenerative disc disease (20 [C.F.R. §] 404.1520(c))."  (*Id.*).  At step three, the ALJ determined that, through the date last

insured, Plaintiff did "not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1 (20 [C.F.R. §§] 404.1520(d), 404.1525 and 404.1526)." (*Id.* at 25).

At step four, the ALJ found that, through the date last insured, Plaintiff had the residual functional capacity ("RFC"):

> to perform light work as defined in 20 [C.F.R. §] 404.1567(b) except avoiding climbing ladders, ropes, and scaffolds; occasionally climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; frequently handling; avoiding concentrated exposure to vibration; avoiding unprotected heights and hazardous machinery.

(*Id.* at 25-26). The ALJ also determined that "[t]hrough the date last insured, [Plaintiff] was capable of performing past relevant work as a cleaner, assembler, and mail handler. This work did not require the performance of work-related activities precluded by the claimant's [RFC] (20 [C.F.R. §] 404.1565)." (*Id.* at 28).

For those reasons, the ALJ held that Plaintiff "was not under a disability, as defined in the Social Security Act, at any time from December 14, 2015, the alleged onset date, through December 31, 2016, the date last insured (20 [C.F.R. §] 404.1520(f))." (*Id.* at 29).

## IV.    Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v.*

*Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); *Richardson*, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that "the evidence preponderates against" the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (a court must scrutinize the entire record to determine reasonableness of factual findings).

## V.      Analysis

On appeal, Plaintiff raises two issues.  As stated by the parties, the issues are:

1.    Whether substantial evidence supports the ALJ's evaluation of the medical opinions in assessing Plaintiff's RFC; and

2.    Whether substantial evidence supports the ALJ's consideration of the claimant's subjective complaints.

(Doc. 35 at 16, 29).  The Court addresses each issue in turn below.

### A.     The ALJ's Persuasiveness Determination Is Supported by Substantial Evidence.

First, Plaintiff essentially argues that the ALJ erred by failing to properly conduct a persuasiveness determination for Dr. Rubinson's, Dr. Liavona's, and Dr. Shea's medical opinions.  (*See* Doc. 35 at 16-23).  More particularly, Plaintiff takes issue with the ALJ's persuasiveness determination in which the ALJ reasoned that "the [three medical] opinions . . . are not persuasive because they are not consistent with or supported by the medical record documenting largely normal and stable physical functioning, effective treatment, and robust activities of daily living . . . ." (*See id.* at 20 (citing Tr. at 28)).  Plaintiff asserts that the ALJ's stated rationale is insufficient because it is a generic statement that fails to point to any specific medical records contradicting the three physicians' medical opinions.  (*Id.*).

Plaintiff further contends that the ALJ's insufficient rationale precludes the Court from determining whether the ALJ's persuasiveness determination is supported by substantial evidence.  (*See id.* at 20).  In support, Plaintiff analogizes the instant case to *Pierson v. Commissioner of Social Security*, No. 6:19-cv-01515-RBD-DCI, 2020 WL 1957597, at *1 (M.D. Fla. Apr. 8, 2020), *report and recommendation adopted*, 2020 WL 1955341 (M.D. Fla. Apr. 23, 2020), and argues that "[t]he ALJ in the instant case offered the same reasoning for discounting the opinions of Dr. Rubinson, Dr. Liavona, and Dr. Shea, as was offered in *Pierson*, and as that [C]ourt held, this reasoning was not enough to permit the reviewing court to conduct a

meaningful review." (Doc. 35 at 20-22 (citations omitted)).  In sum, Plaintiff essentially argues that the ALJ's persuasiveness determination lacks sufficient specificity for the Court to determine that it is supported by substantial evidence. (*See id.* at 16-23).

In response, the Commissioner contends that the ALJ did not err in her evaluation of Dr. Rubinson's, Dr. Liavona's, and Dr. Shea's medical opinions.  (*See id.* at 23-29).  In support, the Commissioner contends that the ALJ identified evidence supporting her persuasiveness determination throughout the whole decision.  (*See id.* at 27 (citing Tr. at 27, 331-33, 669, 673, 806, 930, 963-64, 997, 1006, 1016, 1018, 1026-27, 1054)).  Additionally, the Commissioner contends that *Pierson* is not binding on this Court and is factually distinguishable from the instant case.  (*Id.* at 28-29 (citations omitted)).

Social Security Administration revised its regulations regarding the consideration of medical evidence, with those revisions applicable to all claims filed after March 27, 2017.  *See* 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017). Because Plaintiff filed her claim on December 22, 2017, (Tr. at 21; Doc. 35 at 17), the revised regulations apply, *see* 20 C.F.R. § 404.1520c.  The regulations require that an ALJ apply the same factors in considering opinions from all medical sources, rather than afford specific evidentiary weight to certain sources' opinions.  20 C.F.R. § 404.1520c(a).

In contrast, under Eleventh Circuit precedent, the "treating source rule" requires the ALJ to afford "[t]he opinion of a treating physician . . . substantial or

considerable weight unless 'good cause' is shown to the contrary." *Phillips*, 357 F.3d at 1240 (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)).

At present, a question remains as to whether the SSA's 2017 revised regulations override the Eleventh Circuit's treating source rule. *Compare Bevis v. Comm'r of Soc. Sec.*, No. 6:20-cv-579-LRH, 2021 WL 3418815, at *6 (M.D. Fla. Aug. 5, 2021) ("Given the absence of any binding or persuasive guidance from the Court of Appeals, the Court is not willing to go as far as the Commissioner suggests and find that cases applying the 'good cause' standard are no longer good law, particularly given that *Winschel* [*v. Comm'r of Soc. Sec.*, 631 F.3d 1176 (11th Cir. 2011)] remains binding Eleventh Circuit precedent."), *with Matos v. Comm'r of Soc. Sec.*, No. 21-11764, 2022 WL 97144, at *4 (11th Cir. Jan. 10, 2022) ("[The SSA's] new regulatory scheme no longer requires the ALJ to either assign more weight to medical opinions from a claimant's treating source or explain why good cause exists to disregard the treating source's opinion."), *Douglas v. Saul*, No. 4:20-cv-00822-CLM, 2021 WL 2188198, at *4 (N.D. Ala. May 28, 2021) ("[Based on the application of *Chevron* and *Brand X*,] the court will apply the 2017 regulations – not the treating physician rule – to the ALJ's evaluation of the opinion evidence."), *and Stemple v. Kijakazi*, No. 1:20-cv-485, 2021 WL 4060411, at *6 (N.D. Ohio Sept. 7, 2021) (collecting cases in support of the same proposition). At the same time, while the Eleventh Circuit has not directly addressed the issue in a published opinion, it has considered it in a recent unpublished opinion, *Matos v. Commissioner of Social*

*Security*, No. 21-11764, 2022 WL 97144, at *4 (11th Cir. Jan. 10, 2022).[2]  In *Matos*, the Court found that the ALJ's assessment of a treating source's medical opinion was legally sufficient where the ALJ only considered the medical opinion's supportability and consistency "in accordance with the SSA's new regulatory scheme."  *Id.*  The Court expressly stated the SSA's "new regulatory scheme no longer requires the ALJ to either assign more weight to medical opinions from a claimant's treating source *or explain why good cause exists to disregard the treating source's opinion*."  *Id.* (emphasis added).

Plaintiff briefly addresses the SSA's 2017 revised regulations and states that "pursuant to the new regulations, the Commissioner is not required to articulate how [s]he 'considered each medical opinion or prior administrative finding from one medical source individually.'"  (Doc. 35 at 18-19 (citations omitted)).  Given Plaintiff's apparent concession and the Eleventh Circuit's recent opinion in *Matos*, the Court finds that the ALJ here is not required to demonstrate good cause to find a treating source's medical opinion unpersuasive.  However, even if the Eleventh Circuit's good cause requirement still applies, the result remains the same under both standards because Plaintiff does not allege that Dr. Rubinson, Dr. Liavona, or Dr. Shea is a treating physician.

---

[2]  Unpublished opinions may be cited as persuasive on a particular point.  The Court does not rely on unpublished opinions as binding precedent.  Citation to unpublished opinions on or after January 1, 2007, is expressly permitted under Rule 31.1, Fed. R. App. P.  Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules.  11th Cir. R. 36-2.

Under the revised regulations, as to each medical source, the ALJ must consider:  (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) "other factors that tend to support or contradict a medical opinion or prior administrative medical finding."  20 C.F.R. § 404.1520c(c).

Supportability and consistency are the most important factors in any evaluation, and the ALJ must explain how those two factors are considered.  *See* 20 C.F.R. § 404.1520c(b)(2).  In assessing the supportability and consistency of a medical opinion, the regulations provide that the ALJ need only explain the consideration of these factors on a source-by-source basis – the regulations themselves do not require the ALJ to explain the consideration of each opinion from the same source.  20 C.F.R. § 404.1520c(b)(1).  The regulations state:

> [W]hen a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from the medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate.  We are not required to articulate how we considered each medical opinion or prior administrative finding from one medical source individually.

20 C.F.R. § 404.1520c(b)(1).

Overall, supportability relates to the extent to which a medical source has articulated support for the medical source's own opinion, while consistency relates to the relationship between a medical source's opinion and other evidence within the record.  *See* 20 C.F.R. § 404.1520c(c)(1)-(2).  Put differently, the ALJ's analysis considers whether the medical source's opinion is (1) supported by the source's own

records and (2) consistent with the other evidence of record.  *See Cook v. Comm'r of Soc. Sec.*, No. 6:20-cv-1197-RBD-DCI, 2021 WL 1565832, at *3 (M.D. Fla. Apr. 6, 2021), *report and recommendation adopted*, No. 6:20-cv-1197-RBD-DCI, 2021 WL 1565162 (M.D. Fla. Apr. 21, 2021).

Here, Plaintiff challenges the ALJ's findings that Dr. Rubinson's, Dr. Liavona's, and Dr. Shea's medical opinions were not persuasive.  (Doc. 35 at 16-23).  To assess whether these findings are supported by substantial evidence, the Court reviews below how the ALJ determined the persuasiveness of each opinion.

In evaluating the persuasiveness of Dr. Rubinson's, Dr. Liavona's, and Dr. Shea's medical opinions, the ALJ summarized the primary findings within each opinion and then specifically noted that the opinions were "not consistent with or supported by the medical record documenting largely normal and stable physical functioning, effective treatment, and robust activities of daily living."  (*See* Tr. at 28).  Moreover, the Court finds that there is substantial evidence within the record to support the ALJ's determination.  (*See id.* at 669, 673, 806, 930, 1018, 997, 1006, 961-64, 993, 1016, 1026, 329-36, 380-90).

On March 23, 2016, Dr. Rubinson conducted a disability determination evaluation and opined that Plaintiff "exhibit[ed] some significant weakness of the right side of her body[,] . . . diminished range of motion[,] . . . [the ability to] lift and carry up to [ten] pounds with the left upper extremity, but not with the right[, the ability to] stand and walk [two] hours in an [eight]-hour day[, and] . . . some manipulative restrictions . . . ."  (*Id.* at 964).  Then, on October 3, 2019, Dr. Liavona

filled out a physical RFC questionnaire and opined that Plaintiff could never lift any weight, could only stand and walk for less than two hours in an eight-hour workday, could only sit about four hours in an eight-hour workday, would be absent from work more than four days per month, and exhibited postural and manipulative limitations.  (*Id.* at 1543-46).  Additionally, on October 7, 2019, Dr. Shea completed a physical RFC questionnaire and opined that Plaintiff exhibited severe fatigue, could only stand and walk for less than two hours in an eight-hour workday, could only sit for about two hours in an eight-hour workday, could only lift about ten pounds, and exhibited postural and manipulative limitations.  (*Id.* at 1555-58; *see also id.* at 1547-54).

The ALJ found that all three opinions were "not consistent with or supported by the medical record documenting largely normal and stable physical functioning, effective treatment, and robust activities of daily living."  (*Id.* at 28).

The medical records specifically relied on by the ALJ that document "largely normal and stable physical functioning" include:  (1) Dr. Sancaktar's October 20, 2015 and November 2, 2015 records, which state that Plaintiff was "comfortable . . . [with a] normal affect[,] . . . no joint tenderness[, and] . . . normal strength," (*see id.* at 27 (citing Tr. at 669, 673)); (2) NP Sjoberg's December 10, 2015 record, which states that Plaintiff was "in no acute distress [and had a] normal mood and affect," (*see id.* (citing Tr. at 806)); (3) Dr. Sancaktar's January 25, 2016 record, which notes that Plaintiff's nerve conduction-EMG study was "entirely normal in the right upper and lower extremities," (*see id.* (citing Tr. at 930)); (4) CNS Bronwyn Long's August 18,

2016 record, which reveals that Plaintiff was in no acute distress, exhibited a steady gait, and did not use an assistive device, (*see id.* (citing Tr. at 1018)); (5) Dr. Maleki's May 2015 records, which show that the viral load for Plaintiff's hepatitis B was undetectable, and Plaintiff's "[l]abs showed negative rheumatoid factor and anti-nuclear antibodies," (*see id.* (citing Tr. at 997, 1006)); and (6) Dr. Rubinson's March 23, 2016 Disability Determination Evaluation, which notes that Plaintiff walked into the exam room slightly slowly, but had no limp, was in no apparent distress, could get up and down from the exam table fine, did not use an assistive device, and had four out of five motor strength throughout her extremities, (*see id.* (citing Tr. at 961-64)).

Additionally, the medical records specifically relied on by the ALJ that show "effective treatment" include CNS Bronwyn Long's June 7, 2016 and August 18, 2016 records, which report that "[Plaintiff] takes Cymbalta for pain . . . [and] does not want to give [it] up" and "Plaintiff said [that Ibuprofen] continues to work well for her." (*See id.* (citing Tr. at 993, 1016, 1026)).

Moreover, the evidence specifically relied on by the ALJ that shows "robust activities of daily living" includes:  (1) Plaintiff's January 18, 2016 Function Report, in which Plaintiff explains that she can prepare basic meals and cook every day, clean once a week, do laundry twice a week, vacuum, do "yard work . . . during the summer," shop for groceries "once a week [for] about an hour," watch television, attend church once a week, and walk "[a]bout half a mile or less" prior to needing to rest for "[a]bout 10 minutes" before continuing, (*see id.* (citing Tr. at 329-36)); and (2)

Plaintiff's May 7, 2018 Function Report, created over a year after Plaintiff's date last insured, in which Plaintiff explains that she can prepare "simple food" twice a day, take care of her daughter's daughter, read, listen to music, watch television, go on "slight walks," attend church once a week, and walk "less than half a mile" prior to needing to rest for "[a] few minutes" before continuing, (*see id.* (citing Tr. at 380-90)).

Upon review of the evidence specifically cited by and considered by the ALJ, the Court finds that the ALJ's persuasiveness determination is sufficiently supported by substantial evidence.   To that end, the ALJ demonstrated that Dr. Rubinson's medical opinion was unsupported by a portion of Dr. Rubinson's March 23, 2016 Disability Determination Evaluation notes.  (*See id.* at 27-28 (citing Tr. at 961-64)). Additionally, the ALJ showed that Dr. Rubinson's, Dr. Liavona's, and Dr. Shea's medical opinions were inconsistent with the "medical record[s] documenting largely normal and stable physical functioning, effective treatment, and [Plaintiff's] robust activities of daily living."  (*See id.* (citing Tr. at 669, 673, 806, 930, 1018, 997, 1006, 961-64, 993, 1016, 1026, 329-36, 380-90)).

Further, the Court is not persuaded by Plaintiff's argument that the ALJ's decision lacks adequate reasoning for the Court to conduct a meaningful review.  (*See* Doc. 35 at 20-22 (citing *Pierson*, 2020 WL 1957597, at *1)).  Rather, the Court finds that here, unlike in *Pierson*, the ALJ's persuasiveness determination sufficiently identified the evidence that the ALJ relied on to find Dr. Rubinson's, Dr. Liavona's, and Dr. Shea's medical opinions unpersuasive.

For example, the ALJ's persuasiveness determination relied on "the medical record[s] documenting largely normal and stable physical functioning," (Tr. at 28), which clearly referred to the ALJ's earlier assessment of "physical exams through the date last insured show[ing] largely benign findings," (*id.* at 27 (citing Tr. at 669, 673, 930, 997, 1006, 1018)).  Additionally, the ALJ's determination relied on "effective treatment," (*id.* at 28), which referred to the ALJ's assessment that Plaintiff's "[t]reatment was effective in alleviating symptoms," (*id.* at 27 (citing Tr. at 993, 1016, 1026)).  Finally, the ALJ's finding that the medical opinions were inconsistent with Plaintiff's "robust activities of daily living," (*id.* at 28), directly referred to the ALJ's prior summarization and consideration of "the claimant's robust activities of daily living," (*id.* at 27 (citing Tr. at 329-36, 380-90)).

Accordingly, the Court finds that the ALJ's persuasiveness determination refers to prior portions of her decision in which she provided in-depth evaluations of the evidence of record.  (*See* Tr. at 27 (citations omitted)).

Alternatively, even if the ALJ erred in failing to expressly cite the other evidence of record within her persuasiveness determination, the Court finds that error harmless.  *See Denomme v. Comm'r, Soc. Sec. Admin.*, 518 F. App'x 875, 877 (11th Cir. 2013) (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983); *Sanchez v. Comm'r of Soc. Sec.*, 507 F. App'x 855, 856 (11th Cir. 2013) (noting that the Court has declined to remand "for express findings when doing so would be a 'wasteful corrective exercise' in light of the evidence of record and when no further findings could be made that would alter the ALJ's decision").

In sum, the Court finds that the ALJ sufficiently analyzed the supportability and consistency of Dr. Rubinson's, Dr. Liavona's, and Dr. Shea's medical opinions when determining their persuasiveness as required by 20 C.F.R. § 404.1520c. Additionally, the Court finds that the ALJ's determination of the persuasiveness of Dr. Rubinson's, Dr. Liavona's, and Dr. Shea's medical opinions is supported by substantial evidence within the record.  The Court has not found, and Plaintiff has not cited, any medical evidence revealing that the ALJ's finding as to the persuasiveness of Dr. Rubinson's, Dr. Liavona's, and Dr. Shea's medical opinions is not supported by substantial evidence.  Thus, the Court finds that the ALJ's decision is due to be affirmed as to this issue.

**B.   The ALJ's Subjective Symptom Evaluation Is Supported by Substantial Evidence.**

Second, Plaintiff argues that "[t]he ALJ's consideration of [Plaintiff's] credibility and subjective complaints was not sufficient."  (*See* Doc. 35 at 29-32). Specifically, Plaintiff contends that the ALJ's "credibility determination is . . . nothing more than boiler plate type language commonly found in Social Security decisions."  (*Id.* at 31 (citing Tr. at 26; *Pate v. Comm'r of Soc. Sec.*, No. 6:14-cv-1493-Orl-GJK, 2016 WL 455443, at *4 (M.D. Fla. Feb. 5, 2016))).  Plaintiff asserts that the ALJ "does not offer any specific reasons for undermining [Plaintiff's] testimony," and, therefore, the Court cannot conduct a meaningful review of the ALJ's credibility determination.  (*Id.* at 31-32 (citations omitted)).  In sum, Plaintiff argues

16

that the ALJ's failure to provide explicit reasons to discount Plaintiff's credibility constitutes reversible error.  (*Id.* at 32).

In response, the Commissioner argues that the ALJ properly evaluated Plaintiff's subjective complaints under the regulations and Eleventh Circuit case law. (*Id.* at 32-41).

To establish disability based on testimony of pain and other symptoms, a plaintiff must satisfy two prongs of the following three-part test:  "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Holt v. Sullivan*, 921 F.3d 1221, 1223 (11th Cir. 1991)).  After an ALJ has considered a plaintiff's complaints of pain, the ALJ may reject them as not credible, and that determination will be reviewed to determine whether it is based on substantial evidence.  *Moreno v. Astrue*, 366 F. App'x 23, 28 (11th Cir. 2010) (citing *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992)).  If an ALJ discredits the subjective testimony of a plaintiff, then she must "articulate explicit and adequate reasons for doing so.  Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true."  *Wilson*, 284 F.3d at 1225 (citations omitted).  "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court."  *Foote*, 67 F.3d at 1562.

The factors an ALJ must consider in evaluating a plaintiff's subjective symptoms are: "(1) the claimant's daily activities; (2) the nature and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) effects of medications; (5) treatment or measures taken by the claimant for relief of symptoms; and other factors concerning functional limitations." *Moreno*, 366 F. App'x at 28 (citing 20 C.F.R. § 404.1529(c)(3)).

The Court finds that the ALJ's subjective symptom evaluation is supported by substantial evidence and the ALJ did not err.

As an initial matter, while Plaintiff refers to the ALJ's subjective symptom evaluation as a "credibility determination," (*see* Doc. 35 at 31), Social Security Regulation ("SSR") 16-3p eliminates the use of the term "credibility" in the sub-regulatory policy. SSR 16-3p, 81 Fed. Reg. 14166, 14171. SSR 16-3p stressed that, when evaluating a claimant's symptoms, the adjudicator will "not assess an individual's overall character or truthfulness" but will instead "focus on whether the evidence establishes a medically determinable impairment that could reasonably be expected to produce the individual's symptoms and given the adjudicator's evaluation of the individual's symptoms, whether the intensity and persistence of the symptoms limit the individual's ability to perform work-related activities." *Id.* SSR 16-3p clarifies that adjudicators will consider whether the "individual's statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and other evidence of record." *Id.* at 14170. The ALJ's opinion, read in context, did not assess Plaintiff's "character or truthfulness."

Consistent with the two-step process for evaluating symptoms, it assessed Plaintiff's subjective complaints and found that they conflicted with the other evidence in the record.  (*See* Tr. at 24-28 (citations omitted)); *see also* SSR 16-3p, 81 Fed. Reg. 14166, 14170-71; *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1308 n.3 (11th Cir. 2018).[3]

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause Plaintiff's alleged symptoms, but her statements concerning intensity, persistence, and the limiting effects of those symptoms were not entirely consistent with the medical and other evidence of record for the reasons she stated in her decision.  (Tr. at 26).

The ALJ summarized Plaintiff's allegations regarding:  (1) her conditions; (2) the limitations from her conditions; (3) the side effects from her medications; (4) her pain; and (5) her hearing testimony.  (*Id.* at 26 (citing Tr. at 334, 336, 340, 388, 398-401)).  However, the ALJ contrasted this testimony with medical evidence consisting of:  (1) "physical exams through the date last insured show[ing] largely benign findings," (*id.* at 27 (citing Tr. at 669, 673, 930, 997, 1006, 1018)); and (2) recordings showing that Plaintiff's "[t]reatment was effective in alleviating symptoms [through]

---

[3]  "Social Security Rulings are agency rulings published under the Commissioner's authority and are binding on all components of the Administration."  *Klawinski v. Comm'r of Soc. Sec.*, 391 F. App'x 772, 775 (11th Cir. 2010) (citing *Sullivan v. Zebley*, 493 U.S. 521, 531 n.9 (1990)).  While Social Security Rulings are not binding on the Court, they are still afforded "great respect and deference, if the underlying statute is unclear and the legislative history offers no guidance."  *Id.* (citing *B. ex rel. B. v. Schweiker*, 643 F.2d 1069, 1071 (5th Cir. 1981)).

. . . Cymbalta . . . [and] Ibuprofen," (*id.* (citing Tr. at 993, 1016, 1026)).  The ALJ "[f]urther rebutt[ed Plaintiff's] allegations of disabling symptoms," by highlighting and summarizing Plaintiff's "robust activities of daily living."  (*Id.* (citing Tr. at 329-36, 380-90)).  The ALJ also accounted for and considered the medical evidence of record showing that Plaintiff did at times show abnormal findings.  (*Id.* (citing Tr. at 669, 803, 927, 930, 1005, 1052, 1054)).  After considering Plaintiff's subjective symptoms and the associated medical evidence, the ALJ made a determination, supported by substantial evidence, that Plaintiff could perform light work activity with some limitations, consistent with the RFC finding.  (*Id.* at 25-27).

The Court is unpersuaded by Plaintiff's argument that the ALJ failed to "provide explicit reasons for discounting [Plaintiff's subjective symptom allegations]."  (*See* Doc. 35 at 32).  Rather, the ALJ provided specific examples of inconsistencies between Plaintiff's allegations and the other evidence of record.  (Tr. at 27 (citing Tr. at 669, 673, 930, 997, 1006, 1018, 993, 1016, 1026, 329-36, 380-90)).  Moreover, Plaintiff fails to cite to any portion of the record that she contends the ALJ overlooked in the subjective symptom determination.  (*See* Doc. 35 at 29-32).

The subjective symptom evaluation is the province of the ALJ and this Court declines to disturb it given the substantial supporting evidence in the record cited by the ALJ.  *See Foote*, 67 F.3d at 1562.  Moreover, when the ALJ conducts the subjective symptom evaluation "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in [her] decision, so long as the ALJ's decision enables the district court to conclude that the ALJ considered [the

claimant's] medical condition as a whole." *Adams v. Comm'r of Soc. Sec.*, 586 F. App'x 531, 533 (11th Cir. 2014) (quotations omitted). Here, upon reviewing the record, the Court finds that the ALJ considered Plaintiff's medical history, treatment history, and activities of daily living, and appropriately found them inconsistent with Plaintiff's subjective complaints. (*See* Tr. at 25-27 (citations omitted)).

In sum, the Court finds that the ALJ considered the entire record of evidence, appropriately found it inconsistent with Plaintiff's subjective complaints, and provided sufficient explicit reasoning such that the Court could conduct a meaningful review of the ALJ's determination. (*See* Tr. at 24-28); *see also Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) ("[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in [her] decision, so long as the ALJ's decision . . . is not a broad rejection which is not enough to enable [the Court] to conclude that [the ALJ] considered [Plaintiff's] medical condition as a whole.") (quotations omitted and citing *Foote*, 67 F.3d at 1558). Accordingly, the Court finds that the ALJ's subjective symptom determination is supported by substantial evidence and the ALJ's decision is due to be affirmed as to this issue.

**VI.     Conclusion**

Upon consideration of the parties' submissions and the administrative record, the Court finds that the ALJ's decision is supported by substantial evidence. Accordingly, the Court **ORDERS** that:

1.     The decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

2.     The Clerk of Court is directed to enter judgment accordingly, to terminate any pending motions and deadlines, and to close the case.

**DONE AND ORDERED** in Fort Myers, Florida on March 17, 2022.

Mac R. McCoy
United States Magistrate Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties